**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **CRIMINAL NO. 16-154 (KBJ)** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **LUZ IRENE FAJARDO CAMPOS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### GOVERNMENT'S SUPPLEMENT TO MOTION *IN LIMINE* TO INTRODUCE EVIDENCE OF OTHER CRIMES AT TRIAL

The United States of America, by and through counsel, respectfully supplements its

Motion *in Limine* to Introduce Evidence of Other Crimes at Trial [ECF No. 48] in order to admit

other crimes evidence at trial as intrinsic, or direct, evidence of the conspiracy charged. The

government seeks to admit evidence of the defendant's involvement in bribery and corruption to

further the objectives of the drug-trafficking organization ("DTO") as direct evidence of the

conspiracy charged. The government further seeks to admit as intrinsic evidence limited

testimony regarding a conflict with another drug trafficking group over smuggling routes, as well

as the possession of firearms by the defendant's bodyguards.[1]

A. Evidence of Bribery

At trial, the government intends to introduce evidence of public corruption through bribery

as direct evidence of the charged drug trafficking conspiracy. Such evidence will largely come

from the testimony of a confidential source (CS-1). CS-1 will testify that the defendant believed

he had high-level connections to the Mexican government, including the police. As such, most

---

[1] The government previously brought this to the Court's attention only in a footnote in the Gov't Other Crimes Mot. Reply. This is because the government considered this evidence so intrinsic to the conspiracy, it did not seek the evidence's inclusion under Federal Rule of Evidence 404b. Intrinsic evidence is direct evidence of the charged conspiracy, and thus is not subject to the notice requirement of FRE 404(b). As a result, the Gov't Other Crimes Mot. was not an exhaustive list of all evidence the Government was seeking to admit as intrinsic to the conspiracy.

requests made to CS-1 during the time period of the charged conspiracy involved seeking corrupt, governmental acts to facilitate the defendant's drug trafficking and/or the Sinaloa Cartel at large. There are also limited BlackBerry Messenger ("BBM") text messages relating to bribery and corruption.

The government anticipates introducing evidence of the following. The below list is not exhaustive but illustrates the type of testimony that the government intends to introduce at trial.

1) In 2012, the Sinaloa Cartel was engaged in a conflict with another Mexican drug trafficking organization in the Mexican state of Morelos, which according to CS-1 constituted important territory for cocaine trafficking routes. The defendant solicited CS-1 in an attempt to have their rivals in this area arrested, thus allowing the Sinaloa Cartel to traffic narcotics through unhindered. Also during this conflict, the defendant would contact CS-1 to have Sinaloa Cartel drug traffickers, radios, and other equipment released from Mexican law enforcement custody in furtherance of the goal of controlling these drug trafficking routes. To facilitate the release of Sinaloa Cartel operatives from jail, CS-1 and the defendant discussed working to place a corrupt official in charge of a particular prison.

2) In 2012, several planes used by the Sinaloa Cartel to transport cocaine were detained at an airport. The defendant asked the confidential source to assist in having the planes released.

3) In approximately 2012, the defendant discussed with CS-1 paying bribes to police personnel at Mexico City International Airport to smuggle suitcases full of cocaine out of the airport.

4) In approximately 2015, CS-1 and the defendant attended a meeting together with port officials from the Port of Manzanillo where they agreed to let methamphetamine precursor chemicals through the ports in exchange for bribes.

5) In approximately 2013, the defendant requested the confidential source's assistance in getting numerous seized barrels of monomethylamine, a precursor chemical for methamphetamine, out of the Port of Altamira via bribery and political pressure. CS-1 also facilitated moving containers of precursor chemicals through the Port of Tamaulipas. Other evidence will also establish that the defendant operated a methamphetamine lab in northern Mexico.

6) BBM intercepts in December 2014 discuss codes being "bought and paid for" for a pending flight down to Venezuela. SA Hanratty of the DEA will testify that this refers to bribing the Venezuelan airforce to prevent a drug plane being shot down. Further witness testimony will establish that in December 2014, the defendant

2

participated in sending a plane from Mexico to pick up cocaine on a clandestine airstrip in the Venezuelan jungle.

B.  Evidence of Weapons

The government seeks to admit limited evidence regarding the possession of weapons in furtherance of the drug trafficking conspiracy.

1)  The defendant inquired if CS-1 could provide rifles to her to facilitate the Sinaloa Cartel's fight for drug trafficking routes in Morelos.

2)  CS-1 will testify that the defendant frequently had armed security with her at meetings, and that her main body guard, Isaac, always carried a gun.

C.  Legal Standard

This Circuit has defined intrinsic "other crimes" evidence as: "'evidence … of an act that is part of the charged offense' or of 'uncharged acts performed contemporaneously with the charged crime … if they facilitate the commission of the charged crime." *United States v. McGill*, 815 F.3d 846, 879 (D.C. Cir. 2016) (citing *United States v. Bowie*, 232 F.3d 923, 930 (D.C. Cir. 2000)). Rule 404(b) "excludes only evidence 'extrinsic' or 'extraneous' to the crimes charged, not evidence that is 'intrinsic' or 'inextricably intertwined.'" *United States v. Allen*, 960 F.2d 1055, 1058 (D.C. Cir. 1992), *cert. denied*, 506 U.S. 881 (1992); *see also United States v. Gartmon*, 146 F.3d 1015, 1020 (D.C. Cir. 1998) (holding evidence that defendant charged with fraud had threatened a co-conspirator not "other crimes evidence" but instead "inextricably intertwined" with charged offense).

Intrinsic evidence is admissible as direct evidence of the crimes charged and not subject to analysis under Federal Rule of Evidence 404(b). Because intrinsic evidence, "by its very nature… does not involve *other* crimes, wrongs or bad acts…there is no concern that it might be used as improper character evidence," *United States v. Lerma-Plata*, 919 F. Supp. 2d 152, 156 (D.D.C. 2013), and therefore, Rule 404(b) does not apply.

3

As a practical matter, "[w]hen evidence is 'inextricably intertwined' with the charged crime [or intrinsic], courts typically treat it as the same crime," and admit such evidence. *Bowie*, 232 F.3d at 927. The D.C. Circuit has explicitly recognized "that evidence can be intrinsic to the crimes charged." *United States v. Sitzmann*, 856 F. Supp. 2d 55, 59 (D.D.C. 2012). This is particularly true in the context of conspiracy. *See United States v. Mathis*, 216 F.3d 18, 26 (prosecution "usually allowed considerable leeway in offering evidence of other offenses"). According to the *McGill* Court, "'[w]hen [the] indictment contains a conspiracy charge, uncharged acts may be admissible as direct evidence of the conspiracy itself." *McGill*, 815 F.3d at 881 (citing *United States v. Thai*, 29 F.3d 785, 812 (2d Cir. 1994) (holding that acts of violence committed or threatened by appellants during their participation in the conspiracy was correctly admitted as intrinsic evidence not subject to Rule 404(b) analysis)).

The D.C. Circuit has acknowledged that there are even "several forms of 'other crimes' evidence . . . [that] are not considered extrinsic within the meaning of Rule 404(b)." *United States v. Badru*, 97 F.3d 1471, 1474 (D.C. Cir. 1996). For instance, evidence of uncharged crimes may be intrinsic if it "arose out of the same series of transactions as the charged offense." *United States v. Weeks,* 716 F.2d 830, 832 (11th Cir. 1983). Thus, "[a]s long as evidence of the uncharged criminal conduct is offered as direct evidence of a fact in issue and not as circumstantial evidence of the character of the accused, it is admissible independent of its superficial similarity to that which would be considered evidence of 'other crimes' under Rule 404(b)." *United States v. Gray*, 292 F. Supp. 2d 71, 77–78 (D.D.C. 2003) (citing *Badru*, 97 F.3d at 1475) (citing 22 Charles A. Wright and Kenneth W. Graham, Jr., Federal Practice and Procedure § 5239 at 450 (1978)). *See also United States v. Mahdi*, 598 F.3d 883, 891 (D.C. Cir. 2010) (upholding the admission of

uncharged bad acts as intrinsic evidence not subject to Rule 404(b) analysis that made clear the nature of the conspiracy and "the kind of organizational control" the defendant exercised to be).

D. Argument

The government's proffered bribery evidence should be admitted as intrinsic and inextricably intertwined with the charged drug trafficking conspiracy. The acts of bribery listed above arose out of the same series of transactions as the charged drug trafficking offense, were committed in furtherance of the drug trafficking conspiracy, and are evidence of the drug trafficking conspiracy itself. Evidence of bribery has been admitted as intrinsic when "performed contemporaneously with the charged crime" and when it "facilitate[d] the commission of the charged crime." *McGill*, 815 F.3d at 879. It would be difficult if not impossible for the government to explain how the defendant was able to accomplish her conspiratorial aims without the evidence of corruption and bribery; bribery was a fundamental component of the defendant's efforts to internationally transport and distribute cocaine and methamphetamine. It is therefore inextricably intertwined with the evidence regarding the charged conspiracy, as it elucidates the means and methods by which the defendant committed the charged conspiracy, and facilitated the commission of the trafficking of narcotics. Finally, the fact that the defendant sought to make payments to corrupt public officials is evidence of the conspiracy itself.

The defendant's attempts to procure rifles, facilitate the arrests of rivals, and to free arrested Sinaloa Cartel operatives and equipment from police custody to facilitate the Sinaloa Cartel's efforts to control the drug trafficking routes in Morelos is also intrinsic to the conspiracy. In *Gray,* the court held that evidence of a murder and subsequent attempts to cover up the murder were admissible as direct evidence of the drug conspiracy charged. 292 F. Supp. 2d at 78–79. The court found this testimony to be direct evidence of how the conspiracy created, maintained, and

controlled the marketplace for its drugs. *Id.* Similarly, attempts by the defendant to facilitate control by the Sinaloa Cartel of smuggling routes is directly probative of the conspiracy charged. The defendant worked as a plane broker in conjunction with other members of the Sinaloa Cartel to transport and distribute cocaine. The planes would often land in Central America or southern Mexico, and then members of the drug trafficking organization would drive the cocaine up to the US-Mexico border. The defendant therefore directly profited off the Sinaloa Cartel's ability to use smuggling routes within Mexico to move cocaine. As such, this evidence should be admitted as direct evidence of the conspiracy charged.

As detailed above, the government intends to introduce limited evidence that the Defendant employed bodyguards that possessed weapons to protect her from rival cartels and law enforcement, as well as to protect the cocaine and methamphetamine that she trafficked. On numerous occasions, courts in this circuit have found that a defendant's possession or use of weapons constitute contemporaneous conduct designed to facilitate and advance the goals of a charged conspiracy to traffic narcotics. *See, e.g.*, *United States v. Lorenzana-Cordon*, 141 F. Supp. 3d 35, 43 (D.D.C. 2015); *Lerma-Plata,* 919 F. Supp. 2d at 158 (holding that proposed evidence of defendant's conspiracy to launder money and traffic firearms was intrinsic to the charged drug conspiracy as contemporaneous acts that facilitated the commission of the charged offense); *United States v. Gooch*, 514 F. Supp. 2d 63, 70 (D.D.C. 2007), *aff'd,* 665 F.3d 1318 (D.C. Cir. 2012).  In *Lorenzana-Cordon*, the Court specifically held that the use of heavily armed security was intrinsic to the charged drug distribution conspiracy.  *Lorenzana-Cordon*, 141 F. Supp. 3d at 43. As a result, the government intends to introduce the evidence of carrying firearms as intrinsic to the charged conspiracy.

6

## CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court grant the

government's Motion to introduce the evidence described above as direct, intrinsic evidence of the

charged conspiracy.

              Respectfully Submitted,
              ARTHUR G. WYATT, Chief
              Narcotic and Dangerous Drug Section
              Criminal Division
              United States Department of Justice

By:    */s/  Anthony Aminoff*
              Anthony Aminoff
              Cole Radovich
              Kaitlin Sahni
              Trial Attorneys
              Narcotic and Dangerous Drug Section
              Criminal Division,
              United States Department of Justice
              Washington, D.C. 20530
              Tel: 202-514-0917

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent via the Electronic Case Filing (ECF) system with the United States District Court for the District of Columbia to counsel of record for the defendant, this 25th day of November 2019.

By:      */s/   Anthony Aminoff*
Anthony Aminoff
Trial Attorney
Narcotic and Dangerous Drug Section
Criminal Division,
United States Department of Justice