UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
UNITED STATES OF AMERICA,          ) Criminal Action
                                   ) No. 16-154
vs.                                )
                                   )
LUZ IRENE FAJARDO CAMPOS,          ) March 8, 2018
                                   ) 10:04 a.m.
                Defendant.         ) Washington, D.C.
                                   )
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*


**TRANSCRIPT OF STATUS CONFERENCE**
**BEFORE THE HONORABLE KETANJI B. JACKSON,**
**UNITED STATES DISTRICT COURT JUDGE**

<u>APPEARANCES</u>:

FOR THE GOVERNMENT: ANTHONY THOMAS AMINOFF
                    MICHAEL LANG
                    U.S. Department of Justice
                    Narcotics and Dangerous Drug Section
                    145 N Street, NE
                    Washington, DC 20530
                    (202) 616-2379
                    Email: anthony.aminoff@usdoj.gov




FOR THE DEFENDANT:  CARLOS J. VANEGAS
                    Federal Public Defender
                    for the District of Columbia
                    625 Indiana Ave, NW
                    Washington, DC 20004
                    (202) 208-7500
                    Email: carlos_vanegas@fd.org




Court Reporter:     Elizabeth Saint-Loth, RPR, FCRR
                    Official Court Reporter


        Proceedings reported by machine shorthand, transcript
           produced by computer-aided transcription.

**P R O C E E D I N G S**

THE COURTROOM DEPUTY:  Your Honor, this is Criminal Case No. 16-154, the United States of America versus Luz Irene Fajardo Campos.

The interpreter is Teresa Salazar.

Would counsel please approach the lectern and state your appearances for the record.

MR. AMINOFF:  Good morning, Your Honor. Anthony Aminoff for the Government, and also present is Michael Lang.

THE COURT:  Good morning.

MR. LANG:  Good morning.

MR. VANEGAS:  Good morning, Your Honor. Carlos Vanegas on behalf of Ms. Luz Irene Fajardo Campos.

THE COURT:  Good morning, Mr. Vanegas and Ms. Fajardo Campos.

This is a status conference because, although we have set a trial in this matter next year, due to its complex case designation the Court wanted to continue to check in to make sure the government was on track, in terms of giving information to the defendant and to get information from the government pertaining to the status of any MLAT requests, and the like.

So why don't I start with Mr. Aminoff.

MR. AMINOFF:  Yes.  Thank you, Your Honor.

Since our last status conference, the government has already provided a substantial amount of Rule 16 discovery. We do expect, in the next week or two, to provide one more large amount of discovery to defense. We are just waiting on some unsealing orders to be granted so that we can turn that material over.

At that point, the bulk of Rule 16 discovery will have been provided to the defense. However, we are still waiting on some MLATs to be returned.

THE COURT: Okay. Do you know how many, and do you know how long?

MR. AMINOFF: There are three MLATs pending. It's always a bit up in the air. The amount of time can vary; so I don't have a good answer for the Court about how long that might take. They have been submitted to OIA for several months now, so -- and they have, in fact, been transmitted to the foreign governments.

THE COURT: All right. So you're -- with respect to discovery -- I know I'm jumping around -- you intend to have turned over the bulk of the discovery to the defendant, say, by the end of this month?

MR. AMINOFF: Yes, Your Honor.

THE COURT: All right. Thank you.

Mr. Vanegas?

MR. VANEGAS: Yes, Your Honor.

I did receive from the Government the last time we were in Court, either immediately before or after, some CDs; one contains financial and monetary discovery; and, then, a thumb drive.  It is just thousands and thousands of materials that -- it's very ponderous to go through.  It's difficult, for a number of reasons, because sometimes the messages are kind of disconnected with one another; there is not much of an order to them.  And there is not, like, a table of contents -- not that I would expect it; but it's a very daunting task to go through all of this information, and I have made a dent.

In the meantime, Ms. Fajardo Campos continues to have problems at CTF regarding medical issues that we have discussed before, and specifically in reference to the proposed order that I initially filed with the Court and then withdrew because I was going to go directly to Ms. Maria Amato.

So Ms. Fajardo Campos has been seen by outside physicians; however, she continues to experience both severe pain in reference to symptoms that may be related to her prior bout of cancer that she had and, also, from a severe, severe car accident in which she had broken vertebrae and, as a result, she has metal pins in her neck.  And so those metal pins, it seems, are creating a lot of discomfort for her.

So I can again reach out to Ms. Amato and ask her, at least on this occasion, to have a neurological examination or a neurologist examine Ms. Fajardo Campos for the severe discomfort that she's experiencing in her neck area and also, again, impress upon Ms. Amato that she should see an oncologist; and that it's two separate significant medical hardships that Ms. Fajardo Campos is experiencing.

Separately --

THE COURT:  I'm sorry.  So it's not as though you have made those requests and they have denied them; you just haven't been in a position yet to communicate to her those specific needs.

MR. VANEGAS:  Well, after -- to be accurate, after I withdrew the proposal, I did reach out to Ms. Amato; and it seems that there was follow-up, and that Ms. Fajardo Campos has been seen by two doctors outside the facility. So she has been taken to a hospital -- I don't know which one or where she was taken; but she describes being seen by two separate physicians.  However, those physicians did not look into the problems that she has in her neck area.

So what I can do is, again, follow up with Ms. Amato and basically ask that she be seen separately by a neurologist and an oncologist for the discomfort that she's experiencing based on a prior medical history.  And if there is no response on follow-up, then I can again follow up with

the Court and see where we are with that.

THE COURT:  All right.

MR. VANEGAS:  I know that Ms. Fajardo Campos has also sought the assistance of her counselor to see if they can intervene in providing some type of assistance in that area.

THE COURT:  All right.  Well, you will keep me apprised of the status of things.  It sounds as though, after your prior request, there was some follow-up by the prison in order to make sure that she got seen by someone.  But it seems as though you are suggesting that we need certain specialists, and that you will make the necessary inquiries about that.

MR. VANEGAS:  Yes.  Then, with respect to discovery, as the Court knows, basically 98 percent of the discovery is under a protective order; so that means that I or someone would have to sit at the CTF with Ms. Fajardo Campos while she reviews the stuff.  We're still understaffed in the office.

There is no one else who can -- there is not a Spanish speaking -- there is an administrative secretary who speaks Spanish; but she is not in a position to periodically go.  I mean, it's basically asking her to set aside her own work to do me the favor of seeing Ms. Fajardo Campos.

As a result, while I have been able to make some

progress in reviewing the discovery:  That is, looking at the Title III applications -- because they provide some type of summary of why the government is requesting those orders -- and then looking at some of the chats and hearing some of the phone calls, I have been able to get an understanding of where things are going; but it's a daunting task.  There is so much more.

I say this because without having made enough progress, it's difficult for me to go to the jail and basically just have, kind of, open discovery where we make no progress.

So I haven't seen Ms. Fajardo Campos.  I have followed up with an investigator and had him reviewing the information.  But my suggestion is, again, that we come back in two months.  I think in the next two months there will be more attention where I can provide some type of categorized discovery where we can look into specific incidents or just more of a consistent narrative where things are because for me, right now, it's very difficult to understand, like, where all of this -- these communications, these chats are going.  You know, where -- how do they relate to one another?

THE COURT:  Yes.  Understood.

But let me just ask you, do you have a sense that your staffing concern is going to be taken care of in the

next couple of months?

MR. VANEGAS:  I don't know because that initial employment letter -- the notice was sent out in December, and I know people applied.  I thought that a decision was going to be made two weeks ago; I don't know where that stands.  So it's been communicated, the urgent need for this assistance.

THE COURT:  Is it your sense that any such hire would be able to work with you on this matter and other matters that involve communications in Spanish?

MR. VANEGAS:  Yes.  I mean, that hire is specifically supposed to be bilingual.  As soon as that person comes on board, I am the priority.  I mean, Ms. Fajardo Campos is the priority, and that investigator is going to be working early on exclusively with me because I am inundated with this.  And it's not fair to Ms. Fajardo Campos that she doesn't have the help that she needs.

THE COURT:  Right.  All right.  So your suggestion is to return in two months.  Have you spoken to the government about that at this point?

MR. VANEGAS:  No, we haven't.  No.

THE COURT:  Okay.  Let me take a look at my calendar.  This is in May.  I can see you all on the 17th of May.  Are you available then?

MR. VANEGAS:  Can I just look at my calendar and

also consult with Ms. Fajardo Campos in case she wants me to convey something else to the Court?

THE COURT:  Yes.  Yes.

(Whereupon, counsel and the defendant confer.)

MR. VANEGAS:  Thank you, Your Honor.

THE COURT:  Yes.

MR. VANEGAS:  So Ms. Fajardo Campos has a different view regarding why she was taken to see two doctors.  She saw two separate doctors.

Her view is that because she made agreements in the complaint requesting additional medical care as opposed to me following up with Ms. Amato -- anyway, she wanted me just to clear that up.

Additionally, I believe that her family has been trying to get her -- to obtain a private counsel for her.  I know that they have spoken to a lawyer from Los Angeles; and I was also informed that there was a lawyer from Arizona that was approached and that maybe someone has visited her.

Additionally, her family has spoken with a panel attorney who works in this court, and that is Ms. Carmen Hernandez.  And so what Ms. Fajardo Campos is asking the Court is, essentially, to at this point appoint Ms. Carmen Hernandez because her view is that it seems I'm too busy, that I'm not available, and that I don't return calls.  So she wants to basically have Ms. Hernandez represent her.

THE COURT:  Well, I am reluctant to appoint a particular counsel who has not represented that she's available or interested in taking this case.

Here is what I suggest.  To the extent that she has identified Ms. Hernandez as a potential recipient of the case, Mr. Vanegas, you need to contact Ms. Hernandez; find out whether or not she's willing to take the case.

And insofar as you have represented the staffing concerns related to where you are in the federal defender right now, given the resources, if Ms. Hernandez is willing to take the case, I will make the switch; but you need to reach out to her and arrange it.

You know, the federal defender's office typically is the one that sets up the CJA panel attorneys for the Court; and so it would involve you moving to withdraw, and Ms. Hernandez -- which I will grant under these circumstances -- and then Ms. Hernandez filing a notice of appearance.

MR. VANEGAS:  Yes, Your Honor.

THE COURT:  If that is what Ms. Fajardo Campos is interested in doing.

MR. VANEGAS:  Yes, Your Honor.

May I briefly consult with the government regarding any issue of a conflict and, then, also then consult with Ms. Fajardo Campos?

THE COURT:  Yes.

(Whereupon, counsel confer.)

MR. VANEGAS:  May I just go --

THE COURT:  Yes.

MR. VANEGAS:  Thank you.

(Whereupon, counsel and the defendant confer.)

MR. VANEGAS:  Thank you, Your Honor.

THE COURT:  Yes.

MR. VANEGAS:  So the first issue that needs to be resolved is whether there is a conflict.  That's something that I will have to discuss with government counsel and then they will let me know whether it's a conflict, a waiveable conflict, and how we can proceed.

Once I -- in the meantime, I can also reach out to Carmen -- Ms. Hernandez to see whether she's available.

THE COURT:  Right.

MR. VANEGAS:  And then, once these two parts are resolved, then I can follow up with the Court --

THE COURT:  So should we come back sooner to address this particular counsel issue, or would you like to do it --

MR. VANEGAS:  I can file a motion, Your Honor --

THE COURT:  All right.

MR. VANEGAS:  -- get all of the information and then -- so I think I can file a motion in a week, ten days.

THE COURT:  All right.  So I will expect to hear from you in ten days regarding any motion to withdraw and substitute counsel for Ms. Fajardo Campos, whether it be Carmen Hernandez or someone else on the panel, or whatever. If you want to -- I think it would be good to focus on this aspect of it so that we can get her into a position where she's feeling comfortable with counsel.

MR. VANEGAS:  Yes, Your Honor.  Thank you.

THE COURT:  All right.  In the meantime, I am going to go ahead and set the date that we talked about -- whether it's you or another counsel at that point.  If you would check May 17, at 10:30 a.m.

MR. VANEGAS:  That's fine.

THE COURT:  All right.  So we're going to set this case for May 17 at 10:30 a.m. for a status conference.  I will also hear from you in the next week to ten days about the counsel scenario.  And I don't know that I need to address the Speedy Trial Clock directly other than to say that because the Court has designated this as a complex case, under the Speedy Trial Act, this case -- the clock is being tolled during this period of time.

Is that your understanding, Mr. Vanegas?

MR. VANEGAS:  Yes, Your Honor.

THE COURT:  Government Counsel, is that your understanding as well?

MR. AMINOFF:  Yes.  Thank you, Your Honor.

THE COURT:  All right.  So I've made that clear.

Is there anything else we need to address at this time?

MR. VANEGAS:  No, Your Honor.

MR. AMINOFF:  Nothing from the Government, Your Honor.

THE COURT:  All right.  Thank you.

THE COURTROOM DEPUTY:  All rise.  This court stands adjourned until return of Court.

(Whereupon, the proceeding concludes, 10:24 a.m.)

**CERTIFICATE**

I, ELIZABETH SAINT-LOTH, RPR, FCRR, do hereby certify that the foregoing constitutes a true and accurate transcript of my stenographic notes, and is a full, true, and complete transcript of the proceedings to the best of my ability.

This certificate shall be considered null and void if the transcript is disassembled and/or photocopied in any manner by any party without authorization of the signatory below.

Dated this 15th day of November, 2021.

/s/ Elizabeth Saint-Loth, RPR, FCRR
Official Court Reporter